**FILED**
**CLERK**

11:05 am, Jan 20, 2017

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x
SETH FORTGANG AND RIVKA FORTGANG,

                        Plaintiffs,

        -against-                                                              Decision & Order
                                                                               16-cv-3754 (ADS)(AYS)
PEREIRAS ARCHITECTS UBIQUITOUS LLC, FRIEDMAN
GROUP LLC, DANIELLA SCHWARTZ AND ARI SCHWARTZ,

                        Defendants.
--------------------------------------------------------------------------x
```

APPEARANCES:

**Stern & Schurin LLP**
*Attorneys for the Plaintiffs*
595 Stewart Avenue, Suite 710
Garden City, NY 11530
  By: Steven Stern, Esq.
     Richard S. Schurin, Esq.
     Michael Barer, Esq., Of Counsel

**Gulko Schwed LLP**
*Attorneys for the Defendant Pereiras Architects Ubiquitous LLC*
44 Wall Street, 2nd Floor
New York, NY 10005
  By: Simcha Gitelis, Esq. Of Counsel

**Greenberg Traurig, LLP**
*Attorneys for the Defendants Friedman Group LLC, Daniella Schwartz, and Ari Schwartz*
200 Park Avenue, 38th Floor
New York, NY 10166
  By: Daniel I. Schloss, Esq.
     Zachary C. Kleinsasser, Esq., Of Counsel

**SPATT, District Judge:**

  Homeowners Seth Fortgang and Rivka Fortgang (the "Fortgangs") allege that copyrighted design elements of their home in Lawrence are being illegally infringed through the construction of a look-a-like home in neighboring Cedarhust.

Presently before the Court is a motion by the Defendants, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P.") 12(b)(6), seeking to dismiss the Fortgangs' complaint on the ground that it fails to state a plausible claim under the federal Copyright Act of 1976 (the "Copyright Act"), 17 U.S.C. § 101 *et seq.*

I. BACKGROUND

The following facts are drawn from the complaint and accompanying exhibits. They are construed in favor of the Plaintiffs.

The Fortgangs live in a custom-built home at 14 Auerbach Lane in the village of Lawrence (the "Lawrence Home"). Constructed in 2005, the design of the Lawrence Home was based on architectural plans created by a firm known as DJ Associates Architect, PC ("DJ Associates").

In August 2015, the individual Defendants Daniella Schwartz and Ari Schwartz (the "Schwartzes") requested a copy of the plans for the Lawrence Home from the Lawrence Building Department. According to the complaint, the Schwartzes – with the help of co-Defendants Pereiras Architects Ubiquitous LLC and Friedman Group LLC – then used the Lawrence Home's plans to create a substantially similar architectural design for a home to be built at 266 Villa Place in the nearby Village of Cedarhurst (the "Cedarhurst Home").

The alleged similarities between the Lawrence Home and the Cedarhurst Home form the principal basis for this action. However, although the complaint refers in general terms to the home's underlying "architectural drawings," which apparently relate to the interior and exterior of the Lawrence Home, the well-pled allegations in the complaint focus exclusively on the home's external façade. *See, e.g.*, Compl. ¶ 16 (referring to a "visually distinctive and unique exterior stucco façade"); ¶ 19 (including a color photograph of the exterior of the Lawrence Home); ¶ 28 (featuring a side-by-side comparison of the homes' exteriors in support of the allegation that the Cedarhurst Home "is substantially similar to" the Lawrence Home); ¶ 30 (alleging that the Cedarhurst Home is under construction "and its façade is not yet complete"); ¶ 31 (alleging that the Defendants intend to

2

build the Cedarhurst Home "in accordance with" a graphic rendition of the home's exterior); ¶ 40 (alleging that the Plaintiffs will suffer irreparable harm if the Defendants are not restrained from building the Cedarhurst Home "with an exterior façade that is substantially similar to" that of the Lawrence Home).

Thus, the Court's analysis will be limited to any alleged similarities that are observable in the exterior, front-elevation views of the homes which are contained in the complaint and its attachments. This necessarily does not include the argument, set forth solely in the Fortgangs' legal memorandum, that the Cedarhurst Home also "copie[s] the interior ground floor plan" of the Lawrence Home. *See Russo v. New York Presbyterian Hosp.*, No. 09-cv-5334, 2011 U.S. Dist. LEXIS 28202, at *13 (E.D.N.Y. Mar. 3, 2011) (noting that on a motion to dismiss, "a court considers only the allegations made in the complaint and any documents attached thereto, and thus disregards allegations made in a memorandum of law" (citations omitted)); *see also Taormina v. Thrifty Car Rental*, No. 16-cv-3255, 2016 U.S. Dist. LEXIS 176673, at *11 (S.D.N.Y. Dec. 21, 2016) (a party "cannot supplement his Complaint with facts asserted for the first time in his memorandum of law").

In this regard, the Court, in its discretion, also declines to consider the extrinsic evidence, which, although not attached to the complaint, was submitted by the parties in connection with the present motion. In the Court's view, because the complaint cannot fairly be read as containing allegations specifically pertaining to any interior design elements of the Lawrence Home, evidence such as floor plans and architectural drawings is inappropriate to consider at this juncture. *See Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (limiting the kinds of evidence a court may consider in adjudicating a Rule 12(b)(6) motion).

With that limitation in mind, the Court notes that the exteriors of the Lawrence Home and the Cedarhust Home, as they are depicted in photographs and graphic renderings in the complaint, do apparently share some similarities. Given the detailed nature of the architectural works in

question; and mindful that "the works themselves supersede and control contrary descriptions of them," *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48 (2d Cir. 1986), rather than attempt its own description of the two structures, the Court will reproduce the following side-by-side comparison, which appears at paragraph 28 of the complaint, and which, for purposes of this motion, the Court accepts as an accurate depiction of the Lawrence Home (left) and the Cedarhurst Home (right):



At an unspecified time – apparently after learning of the planned construction of the Cedarhurst Home – the Fortgangs acquired from DJ Associates the proprietary rights to the original architectural drawings for the Lawrence Home, and submitted them to the United States Copyright Office. On June 8, 2016, the Fortgangs received Copyright Registration Number VA 2-006-920 for an architectural work entitled "Fortgang Residence I." The Court notes that the Registration Certificate is attached to the complaint, but none of the underlying materials submitted to the Copyright Office are in the current record.

At or about the same time that the Fortgangs received copyright protection for the "Fortgang Residence I," their counsel sent a series of letters to the Defendants demanding that they cease and desist from further construction on the Cedarhurst Home. Following the Defendants' noncompliance with these demands, the Fortgangs commenced this action seeking to enforce the copyright in the architectural design of the Lawrence Home; to recover alleged monetary damages;

4

and to secure a permanent injunction preventing the Defendants from completing construction on the Cedarhurst Home.

## II. DISCUSSION

### A. The Standard of Review

Under Rule 12(b)(6), a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted." Thus, "[t]o survive a motion to dismiss, the complaint must plead 'enough facts to state a claim to relief that is plausible on its face,' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)." *Otis-Wisher v. Medtronic, Inc.*, No. 14-cv-3491, 2015 U.S. App. LEXIS 9565, at *2 (2d Cir. June 9, 2015).

### B. As to Whether the Complaint Plausibly States a Claim Based on Copyright Infringement

The Defendants contend that dismissal is appropriate because the complaint speaks only in generalities about allegedly original, copyrightable elements of the Lawrence Home – *see, e.g.*, Compl. ¶ 4 ("unique architectural plans"), ¶ 21 ("protectable elements of the work"), ¶ 27 ("distinctive elements and design"), ¶ 41 ("unique architectural work") – and fails to specifically identify any protectable design elements that can plausibly give rise to a claim of infringement. Rather, the Defendants argue, the aesthetic features of the Lawrence Home which the Fortgangs seek to protect are "staple building components" and other recognized styles from which architects typically draw, which are not entitled to copyright protection. For the reasons that follow, the Court agrees.

#### 1. The Elements of a Claim Based on Copyright Infringement

"The Copyright Act 'grants copyright owners a bundle of exclusive rights, including the rights to 'reproduce the copyrighted work in copies' and 'to prepare derivative works based upon the

copyrighted work.'" *Lewinson v. Henry Holt & Co., LLC*, 659 F. Supp. 2d 547, 559 (S.D.N.Y. 2009) (quoting 17 U.S.C. § 102(a)). Thus, "[c]opyright infringement is established when the owner of a valid copyright demonstrates unauthorized copying." *Laureyssens v. Idea Grp., Inc.*, 964 F.2d 131, 139 (2d Cir. 1992).

"[I]n order to establish a claim of copyright infringement, 'a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's.'" *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999)).

2. **As to the First and Second Elements: Ownership of a Valid Copyright and Actual Copying**

In this case, it is apparently undisputed that the Fortgangs own the valid copyright for the design embodied in the architectural plans for the Lawrence Home.

Further, accepting the Plaintiffs' allegations as true, it is plausible that the Defendants accessed and actually copied portions of these plans.

Accordingly, for purposes of this motion, the Court assumes that the first two elements of the test for infringement have been sufficiently pled.

3. **As to the Third Element: Wrongful Copying Based on Substantial Similarity**

Rather, the crux of the parties' dispute is whether the Defendants' actual copying was wrongful – that is, whether substantial similarity exists between the Cedarhurst Home and the protectable elements of the Lawrence Home. *See Zalewski v. Cicero Builder Dev. Inc.*, 754 F.3d 95, 100-02 (2d Cir. 2014) (discussing the distinction between copying and wrongful copying).

a. **The Applicable Legal Principles**

In general, to "determine whether two works are substantially similar – and thus whether any copying was wrongful – [the Second Circuit] usually appl[ies] the 'ordinary observer' test and

6

ask[s] whether 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.' " *Id.*, 754 F.3d at 102 (quoting *Laureyssens*, 964 F.2d at 141).

However, "[p]arrotry does not always mean piracy," *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir. 1994), and, often, "a work's aesthetic appeal will be due largely to unprotected elements," *Zalewski*, 754 F.3d at 102. Thus, in cases where a copyrighted work contains both protectable and non-protectable elements, the Court " 'must be more discerning, [and] ignor[e] those aspects of a work that are unprotectable' as [it] appl[ies] the test . . ." *Id.* (quoting *Laureyssens*, 964 F.2d at 141); *see Attia v. Society of the N.Y. Hosp.*, 201 F.3d 50, 55 (2d Cir. 1999) ("The issue we must decide is whether the similar elements that Defendants assertedly copied from Plaintiff's drawings were protected matter"), *cert. denied*, 531 U.S. 843, 121 S. Ct. 109, 148 L. Ed.2d 67 (2000)); *see also Peter F. Gaito Architecture*, 602 F.3d at 66 ("On occasion . . . we have noted that when faced with works that have both protectible and unprotectible elements, our analysis must be more discerning, and that we instead must attempt to extract the unprotectible elements from our consideration and ask whether the protectible elements, standing alone, are substantially similar" (internal quotation marks and citations omitted)).

"This 'discerning ordinary observer' inquiry entails not a piecemeal comparison of each of the protectible elements with its putative imitation, but rather a careful assessment of the 'total concept and feel' of the works at issue, *after* the non-protectible elements have been eliminated from consideration." *Silberstein v. Fox Entm't Grp., Inc.*, 424 F. Supp. 2d 616, 631 (S.D.N.Y. 2004) (quoting *Boisson v. Banian, Ltd.*, 273 F.3d 262, 272 (2d Cir. 2001) (emphasis supplied)), *aff'd*, 242 F. App'x 720 (2d Cir. 2007).

However, parsing a work's protectable elements from its non-protectable elements can prove challenging. *See Zalewski*, 754 F.3d at 104 ("The challenge in adjudicating copyright cases is . . . to determine what [portion of a copyrighted work] originated with the author and what did not").

In general, protectable elements are those that were independently created by the author and possess at least some minimal degree of creativity. *See Belair v. MGA Entm't*, 831 F. Supp. 2d 687, 693 (S.D.N.Y. 2011), *aff'd*, 503 F. App'x 65 (2d Cir. 2012). "[T]he requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991) (internal citation and quotation marks omitted).

However, "[t]here are elements of a copyrighted work that are not protected even against intentional copying." *Attia*, 201 F.3d at 55. In this regard, "[i]t is a fundamental principle of our copyright doctrine that ideas, concepts, and processes are not protected from copying." *Id*. Rather, although "[c]opyright assures authors the right to their original expression," it also "encourages others to build freely upon the ideas and information conveyed by a work." *Feist*, 499 U.S. at 349-50.

This so-called idea/expression dichotomy is particularly relevant in the context of architectural works. As the Second Circuit has noted, "[t]he problem of distinguishing an idea from its expression is particularly acute when the work of 'authorship' is of a functional nature, as is a plan for the accomplishment of an architectural or engineering project." *Attia*, 201 F.3d at 55.

For example, "generalized notions of where to place functional elements, how to route the flow of traffic, and what methods of construction and principles of engineering to rely on" are " 'ideas' that may be taken and utilized by a successor without violating the copyright of the original 'author' or designer." *Id.* at 55, 57 (architectural drawings that "consisted only of generalized ideas

8

and concepts pertaining to the placement of elements, traffic flow, and engineering strategies" did not "include the type of expressive content entitled to copyright protection").

Similarly, "design elements attributable to building codes, topography, structures that already exist on the construction site, or engineering necessity" receive no copyright protection. *Zalewsi*, 754 F.3d at 106. Nor do elements taken from standard building designs, such as "[n]eoclassical government buildings, colonial houses, and modern high-rise office buildings," which, pursuant to the doctrine of *scenes-a-faire*, represent "recognized styles from which architects draw." *Id.* For instance, "unprotectible elements of architectural works include . . . '[s]tandard configurations of spaces,' [and] 'individual standard features, such as windows, doors, and other staple building components.' " *Buttner v. RD Palmer Enters.*, No. 13-cv-0342, 2015 U.S. Dist. LEXIS 41021, at *19 (N.D.N.Y. Mar. 31, 2015) (quoting 37 C.F.R. § 202.11(d)(2).

Indeed, " 'the narrow scope of protectible expression necessitates that plaintiffs show something akin to 'near identity' between the works in question to prevail.' " *Id.* at *17-*18 (quoting *Zalewski v. T.P. Builders, Inc.*, 875 F. Supp. 2d 135, 148 (N.D.N.Y. 2012)).

Applying these principles, in *Zalewski*, the Second Circuit affirmed the district court's dismissal of a copyright infringement claim based on the design of a colonial-style home. Though acknowledging that the plaintiff's copyrighted design and the allegedly infringing design were "quite close," the court found that the record established "at most copying, not wrongful copying." Of relevance here, the court reasoned that:

> [M]any of the similarities are a function of consumer expectations and standard house design generally. Plaintiff can get no credit for putting a closet in every bedroom, a fireplace in the middle of an exterior wall, and kitchen counters against the kitchen walls. Furthermore, the overall footprint of the house and the size of the rooms are "design parameters" dictated by consumer preferences and the lot the house will occupy, not the architect.
> [Further], most of the similarities between Plaintiff's and Defendants' designs are features of all colonial homes, or houses generally. So long as Plaintiff was seeking to design a colonial house, he was bound to certain conventions. He cannot claim copyright in those conventions. . . .

9

> Plaintiff makes no attempt to distinguish those aspects of his designs that were original to him from those dictated by the form in which he worked. For example, Zalewski claims that the "front porches are the same design, size, and in the same location." But a door centered on the front of the house is typical of many homes, and colonials in particular. Moreover, there are subtle differences in the paneling, size, and framing of Plaintiff's and Defendants' doors. These differences are not great, but given the constraints of a colonial design, they are significant. The same is true of the windows and garage doors that Plaintiff claims are identical. They are quite similar in location, size, and general design, but again, the similarities are due primarily to the shared colonial archetype. The window panes, shutters, and garage-door paneling all have subtle differences. Likewise, the designs' shared footprint and general layout are in keeping with the colonial style. There are only so many ways to arrange four bedrooms upstairs and a kitchen, dining room, living room, and study downstairs. Beyond these similarities, Plaintiff's and Defendants' layouts are different in many ways. The exact placement and sizes of doors, closets, and countertops often differ as do the arrangements of rooms.
>
> Although he undoubtedly spent many hours on his designs, and although there is certainly something of Plaintiff's own expression in his work, as long as Plaintiff adhered to a pre-existing style his original contribution was slight – his copyright very thin. Only very close copying would have taken whatever actually belonged to Plaintiff. Copying that is not so close would – and in this case did – only capture the generalities of the style in which Plaintiff worked and elements common to all homes. Defendants' houses shared Plaintiff's general style, but took nothing from his original expression.

*Zalewsi*, 754 F.3d at 106-07 (internal citations and footnote omitted).

" '[I]n the end, the Court's inquiry necessarily focuses on whether the alleged infringer has misappropriated 'the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work.' " *Mackenzie Architects, PC v. VLG Real Estate Developers, LLC*, No. 15-cv-1105, 2016 U.S. Dist. LEXIS 121269, at *12 (N.D.N.Y. Sept. 8, 2016) (quoting *Knitwaves, Inc. v. Lollytags Ltd.*, 71 F.3d 996, 1004 (2d Cir. 1995)).

      b.        Application to the Facts of this Case

Assuming the truth of the allegations in the complaint – namely, that any similarities in the external appearances of the Lawrence Home and the Cedarhurst Home result from actual copying by the Defendants – the sole question presented here is whether those similarities relate to protected matter. Applying the standards outlined above, the Court answers this question in the negative.

It is apparently true, as the Fortgangs contend, that the two structures share some readily-observable similarities. Perhaps most apparent is the color scheme, as the exteriors of both homes

feature prominent obtruding columns of beige stucco with black window frames and a black or dark brown roof. On both homes, the first-floor columns are topped with horizontal bands of decorative arched molding and flank an entryway characterized by a recessed front door. The columns feature large double-hung windows, directly above which sit congruent second-story windows bookended by narrower stucco columns. Both homes feature two narrow second-story window panes situated above the front door, which are recessed to an apparently equal degree as the door, and multiple dormered windows protruding from the roof. Both homes also incorporate several stone planters lining the front porch.

However, this is where the similarities end. In the Court's view, while there is certainly something of the Fortgangs' personal expression in the selection, coordination, and arrangement of these elements of the Lawrence Home's design, the similarities outlined above generally concern attributes of all colonial-style homes that fall well short of the type of expressive content entitled to copyright protection. Accordingly, since the similarities concern only non-copyrightable elements of the Plaintiffs' work, dismissal at the pleading stage is appropriate. *See Walker*, 784 F.2d at 48.

This remains true, even under the more rigorous "discerning ordinary observer" test, which requires the Court to evaluate the "total concept and feel" of the works at issue. In this regard, while the similarities in the two homes may appear at first glance to be numerous and substantial, in the Court's view, they are overshadowed by differences that, in the final analysis, are far more consequential. *See Zalewsi*, 754 F.3d at 106-07 (even subtle differences in design features are significant when working within the restrictive colonial archetype).

As the Fortgangs concede, the Cedarhurst Home is a materially larger structure, standing three-stories tall, while the Lawrence Home is only two stories. In addition, and of importance to this inquiry, the Cedarhurst Home features an entire additional "wing" that is visible from the front of the property, which the Lawrence Home lacks. This addition is apparently equal in width to the other prominent front-facing stucco columns, and features all the same components, including, in

11

order of elevation, double-hung first-floor windows, bands of horizontal molding, a congruent second floor window, and a dormered window protruding from the roof. The obvious result is that the Lawrence Home's core frontal components are symmetrical, while their counterparts on the Cedarhust Home are not.

Other differences abound: as noted above, the Cedarhurst Home has four dormers protruding from a single-tier roof, while the Lawrence Home has three dormers, which sit atop one portion of a split-level roof and, consequently, are spaced closer together than those on the Cedarhurst Home. Also of importance in this regard, the Lawrence Home has an attached garage, while the Cedarhurst Home does not. The Lawrence Home also features multiple stone and concrete steps leading to the front door, while the Cedarhurst Home has only a single, smaller step. The front door of the Lawrence Home features a stucco surround, with lamps hung on either side. The front door of the Cedarhurst Home is set in black lacquer planks, with no lamps. Also, the styles of the front doors themselves are noticeably different. Further, directly above the Lawrence Home's entryway, aligned with the horizontal bands of molding, is a decorative embellishment in the stucco. In this same space, the Cedarhurst Home features a full balcony with a railing.

Under these circumstances; and in light of the non-protected conventions of colonial-style home-building within which the Cedarhurst Home was designed, the Court finds no plausible basis for concluding that there exists "near identity" between the two homes. Rather, in the Court's view, the allegedly infringing qualities of the Cedarhurst Home are a permissible expansion upon the ideas and information conveyed by the Lawrence Home. Accordingly, the Defendants' motion to dismiss the complaint in its entirety is granted.

C.     As **to the Plaintiffs' Request for Leave to Amend the Complaint**

On the penultimate page of their opposing legal memorandum, the Fortgangs devote a paragraph to requesting permission to file an amended complaint "in the unlikely event the Court determines that Plaintiffs have not stated a sufficient, plausible claim for copyright infringement."

However, this Court has consistently denied as procedurally improper " 'bare request[s] to amend a pleading' contained in a brief, which do[ ] not also attach the proposed amended pleading." *See Aiola v. Malverne Union Free Sch. Dist.*, 115 F. Supp. 3d 321, 343 (E.D.N.Y. 2015) (Spatt, J.) (quoting *Curry v. Campbell*, No. 06-cv-2841, 2012 U.S. Dist. LEXIS 40341, at *22 (E.D.N.Y. Mar. 23, 2012)); *see also Love v. Premier Util. Servs., LLC*, No. 15-cv-5698, 2016 U.S. Dist. LEXIS 63566, at *19-*20 (E.D.N.Y. May 13, 2016) (Spatt, J.); *Melanson v. United States Forensic, LLC*, No. 15-cv-4016, 2016 U.S. Dist. LEXIS 58136, at *48-*49 (E.D.N.Y. Apr. 30, 2016) (Spatt, J.); *Giugliano v. FS2 Capital Partners, LLC*, No. 14-cv-7240, 2015 U.S. Dist. LEXIS 118679, at *12-*14 (E.D.N.Y. Sept. 1, 2015) (Spatt, J.).

Accordingly, at this juncture, the Court denies the Plaintiffs' request for leave to file an amended complaint. This ruling is without prejudice to renewal within 30 days of the date of this opinion as a formal motion, consistent with FED. R. CIV. P. 15 and this Court's Individual Motion Practices.

### III. CONCLUSION

Based on the foregoing, the Court grants the Defendants' motion to dismiss the complaint in its entirety.

If, by February 20, 2017, the Plaintiffs have not filed a formal motion for leave to amend the complaint, the Clerk of the Court is directed to close this case.

It is **SO ORDERED:**

Dated: Central Islip, New York
January 20, 2017

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge